11 CARAWAY, Judge.
This action arises out of elections held October 3, 1998, in Madison Parish in School Board Districts 3 and 4. Percy “Doc” Wright and James L. Williams were candidates for District 4, while Joseph C. Candler and Eddie Fountain were candidates for District 3. The results of the elections showed that in District 4, Williams was the victor over Wright by one vote (205 to 204), and that in District 3, Fountain was the victor over Candler by six votes (142 to 136).
In the action filed by Wright and Candler, the trial court found that substantial irregularities had occurred that could have affected the outcome of the elections and set aside the primary elections. A new election was ordered to be conducted in both districts on November 3, 1998.[1] Williams and Fountain timely appealed.
*765 We affirm the judgment of the trial court.[2]

Facts and Ruling of the Trial Court

Following the 1990 census, the Madison Parish School Board reapportioned its election districts in February 1993. Until this election, no contested school board elections were held in School Board Districts 3 or 4 after the reapportionment. Election precinct 3-A-3 was wrongly placed completely l2within District 3 even though the 1993 reapportionment placed a part of precinct 3-A-3 in District 4. The record indicates that 14 or more voters living on Seventh and Eighth Streets in Tallulah were affected by this error. The record shows with certainty that seven voters who should have voted in District 4 voted in District 3 instead.
The trial court noted that even though the error in the mapping of the district line and the resulting voter registration mistakes were unintentional, the number of qualified voters affected was sufficient to change the result of the election. The court then addressed the defendants’ argument that the plaintiffs had waived their objections to the outcome by failure to exercise due diligence in discovering the error. The defendants argued that Wright not only was a school board member at the time the reapportionment plan was drawn, but also was related to at least six of the affected voters. While the court agreed that Wright had a responsibility as a school board member to see that the reapportionment action of the school board was properly carried out, and while the court felt that Wright possibly should have taken more action than simply questioning the registrar of voters about possible problems with the district line, the court did not find that these failures constituted a waiver to preclude his challenging the irregularity. Similarly, while the court concluded that Candler, who was a school board member at the time of reapportionment, possibly should have known of problems with the district line, the court accepted as credible his testimony that he assumed the voter rosters to be correct.
The trial court concluded that fairness dictated that the respective voters of Districts 3 and 4, rather than the court, should decide the election and that this error in the election process substantially affected the outcome of both elections.
| «Discussion
Appellants, Williams and Fountain, now challenge the trial court’s assessment that a substantial irregularity in the election process was shown so that the election results can be nullified under La. R.S. 18:1432(A). Appellants argue, alternatively, that Wright and Candler, as prior school board members familiar with the 1993 redistrieting plan, waived their rights to contest the election because of their failure to exercise due diligence to challenge the problem in advance of the election in accordance with La. R.S. 18:1434.
The trial court determined that a substantial irregularity or error occurred in the election process so that under La. R.S. 18:1432(A) the election results should be nullified. La. R.S. 18:1432(A) provides, in pertinent part, as follows:
A. If the trial judge in an action contesting an election determines that: (1) it is impossible to determine the result of election, or (2) the number of qualified voters who were denied the right to vote by the election officials was sufficient to change the result in the election, if they had been allowed to vote, or (3) the number of un *766 qualified voters who were allowed to vote by the election officials was sufficient to change the result of the election if they had not been allowed to vote, or (4) a combination of the factors referred to in (2) and (3) herein would have been sufficient to change the result had they not occurred, the judge may render a final judgment declaring the election void and ordering a new primary or general election for all the candidates....
Appellants emphasize that the voters affected by the districting error showed up at their usual polling places to cast their vote, and that no person was denied his or her right to vote. Appellants attempt to analogize this situation to that presented in Smith v. Clark, 29,610 (La.App.2d Cir.11/27/96), 711 So.2d 272. There we held that any failure to have new electoral district lines for city offices precleared under the Federal Voting Rights Act did not constitute irregularities in the conduct of an election upon which an election contest could be based under state election law.
Lin Smith, however, we emphasized that an election violation under the state election code concerns whether elections are conducted in accordance with the procedural mechanisms of state law. Thus, the issue of preelearance under federal law, which was not a prerequisite in the procedure for an election under state law, did not amount to a violation under the state election code. In this case, an undisputed error in the district-ing process occurred because of an oversight by the registrar of voters and the school board administration in the recognition of the change to the district lines. This is a procedural irregularity or error to which the challenge process under the state election code is applicable.
The trial court’s determination that qualified voters were denied the right to vote in District 4 and that unqualified voters were allowed to vote in District 3 was a correct determination under La. R.S. 18:1432(A). A “qualified voter” for purposes of these provisions not only must meet the citizenship and age requirements of Louisiana law, but also must be a bona fide resident of the state, parish, municipality, and precinct. La. R.S. 18:101(A). Reading these statutory provisions together, we agree that a substantial irregularity affected these elections so that under La. R.S. 18:1432(A), the number of affected voters was sufficient to change the result in both elections. Accordingly, we reject the appellants’ first argument.
Regarding the issue of waiver, La. R.S. 18:1434 provides, in pertinent part, as follows:
An objection to the qualifications of a voter ... or to an irregularity in the conduct of the election, which with the exercise of due diligence could have been raised by a challenge of the voter or objections at the polls to the procedure, is deemed waived.
The statute contemplates two reasons for objection. Wright is not objecting to the qualifications of a voter in his district but only to the omission of the voters on Seventh and Eighth Streets due to the irregularity caused by the | ¡misplaced district lines. On the other hand, Candler may have objections for both the listed reasons. Nevertheless, from the additional language of this statute, we question its application to candidates in this setting where the responsibility for this irregularity lies primarily with the registrar of voters. Even more problematic regarding the statute’s application to Wright is the statute’s requirement for raising an “objection at the polls to the procedure.” This obviously contemplates different irregularities from the one that occurred here through the registrar’s misinterpretation of the location of the district line. Regarding the objection that Candler may have raised concerning the qualifications of the seven voters in this district, he had no reason to suspect the existence of this relatively small and technical discrepancy in the drawing of the. district lines which erroneously caused the inclusion of a few extra voters. Thus, based upon a careful reading of the language of the statute, we do not find that a waiver by the parties had occurred.
Moreover, even with a broad interpretation of this statute as urged by appellants, we deem that sufficient evidence of a waiver was not shown. Although Wright’s testimony *767 was at times difficult to follow and somewhat contradictory, the overall tenor of his testimony was that although he knew that his relatives were not registered in his district, he was not certain that the portion of Seventh Street, where his relatives lived, was located within District 4. He testified that if he had known that, “my people wouldn’t have voted in District 3. But I didn’t know it. No, no way.” In other words, although Wright had a question about the voter registration and had once inquired with the registrar of voters, he then accepted the registration as being correct.
Unlike Wright, Candler did not testify that he had any suspicion that a voter registration problem existed. Instead, Candler testified that he accepted the voter rosters as being correct. Thus, based upon the nature of this particular error |6in the election process and the parties’ limited understanding of the problem, we shall not overturn the trial court’s conclusion that no waiver occurred.
Finally, appellants complain they were taxed with costs, contending they played no part in the adoption of the district lines, were not responsible for their promulgation, and were not aware of the situation that existed. Appellants assert they are in the position of defending an election against claims of impropriety which they did not create. These contentions overlook the fact that both the Secretary of State and the Commissioner of Elections were defendants in this lawsuit who could have defended against the claims of irregularities. Appellants voluntarily chose to actively defend the election suit and incur the risk of being cast for costs. The trial court had discretion to tax costs to appellants.

Decree

The State defendants’ motion is granted to the extent that the State may conduct absentee voting and continue election preparations. The trial court’s judgment, at appellants’ costs, is AFFIRMED.
PEATROSS, J., concurs in the result.

. The Madison Parish School Board and Registrar of Voters were made defendants but were dismissed via peremptory exceptions of no cause *765 of action. The judgments on the exceptions are not a subject of this appeal.

. Defendants, the Secretary of State and the Commissioner of Elections, did not appeal the ruling of the trial court, and did not take a position with respect to the merits of the appeal. However, these two defendants did move to have the suspensive appeal dismissed and the appeal designated as a devolutive appeal. Alternatively, they urged this court to reschedule the election ordered by the trial court because some of the deadlines for procedures necessary to conduct the election would occur while the matter was being considered. The election code mandates a highly expedited appeal procedure through the time for an application for writs to the supreme court. La. R.S. 18:1409. This appellate review process, in all likelihood, will be concluded before the time for the new election. Therefore, we agree that a suspensive appeal under these circumstances is unnecessary, and we grant the motion to the extent of recognizing that the trial court’s order of appeal does not prevent the state from preparing for the new election, including conducting absentee voting.